IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| **Jessie Toro**, | Civil Action No. 2:12-1833-DNC-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Science Applications International Corporation** | |
| Defendant. | |

This action has been filed by the Plaintiff, a former employee of the Defendant, asserting various federal and state causes of action arising out of her employment by the Defendant. Defendant has filed a Rule 12 motion to dismiss Plaintiff's Second Cause of Action insofar as it asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as well as Plaintiff's Third Cause of Action under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12117, et seq., and Plaintiff's Fourth Cause of Action for retaliation.

Plaintiff filed a memorandum in opposition to the Defendant's motion on October 18, 2012, following which the Defendant filed a reply memorandum on October 25, 2012.



Defendant's motion is now before the Court for disposition.[1]

## Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

### I.

### (Title VII Retaliation Claims in Second Cause of Action and ADA Claim in Third Cause of Action)

Defendant initially asserts that, to the extent Plaintiff's retaliation claim in her Second Cause of Action is asserted under Title VII, as well as her entire Third Cause of Action under the ADA, should be dismissed for failure of the Plaintiff to exhaust her administrative remedies. In order to bring a lawsuit in United States District Court under Title VII or the ADA, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, these statutes require that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



2

state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a)[ADA adopts procedures set forth in § 2000e-5(e)].

Since South Carolina is a deferral state, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of Defendant's motion, and Plaintiff filed a charge of discrimination with SCHAC on June 16, 2011. See Defendant's Exhibit (Court Docket No. 15-1).[2] Defendant argues in its motion that the filing of this administrative charge by the Plaintiff did not exhaust her administrative remedies with respect to any Title VII retaliation claim or an ADA claim, however, because Plaintiff failed to assert any such claims in her administrative charge. Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC [or SCHAC]"]; Brown v. South Carolina School for Deaf and Blind, No. 11-1111, 2011 WL 5110133 at * 1 (D.S.C. Oct. 26, 2011)["Claims brought under the ADA must be administratively exhausted in the same manner as those claims brought under Title VII prior to filing of an action in federal court."]. A plain reading of Plaintiff's administrative charge of discrimination confirms that she only asserted a claim for sex discrimination in that document, and did not assert a claim for either retaliation or disability discrimination. Defendant's Exhibit (Court Docket No. 15-

---

[2]The Court may consider this exhibit in ruling on Defendant's motion to dismiss. See Williams v. 1199 Seiu United Healthcare Workers East, No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012)["In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme."] (citing Holowecki v. Fed. Express Corp., 440 F. 3d 558, 565-566 (2d Cir. 2006); McDougall v. Maryland Transit Auth., No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012)["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]); see also, Complaint, ¶ 8.



1). Further, Plaintiff has herself provided as an exhibit a copy of SCHAC's letter to her enclosing her charge of discrimination (which Plaintiff was to sign, notarize and return), which clearly states that Plaintiff is only submitting a claim under Title VII and the corresponding state law, and not referencing any disability claim. See Court Docket No. 24-2, p. 1.

Plaintiff argues in her response brief, however, that the Initial Inquiry Questionnaire and supporting documentation she provided to SCHAC (apparently back in September of 2010, almost a year earlier), while not using the term "retaliation", "articulates that she was the subject of negative repercussions in the terms and conditions of her employment as a result of complaining about men getting more pay, better schedules, leniency in disciplinary action, and flexibility with leave", while with respect to her ADA claims, she discusses on page 4 of her inquiry documentation that the Defendant was aware that she had been "pre-diagnosed with cervical cancer . . . .". See Plaintiff's Exhibit A (Court Docket No. 24-1).[3] However, Plaintiff's Initial Inquiry Questionnaire and supporting documentation do not save her Title VII retaliation and ADA claims from dismissal.

Where the administrative agency makes clear that an initial questionnaire does not constitute an administrative charge, any claims raised in the initial questionnaire but not in the actual administrative charge itself (assuming the Court were to otherwise find for purpose of Defendant's motion to dismiss that Plaintiff had actually raised retaliation and/or ADA claims in her initial questionnaire) are not properly exhausted. Middleton v. Motley Rice, LLC, No. 08-3256, 2010 WL

---

[3]See n. 2, supra. See also Ashraf-Hassan v. Embassy of France in U.S., ___ F.Supp.2d ___, 2012 WL 2948548 at * 4 (D.D.C. July 20, 2012)[Finding that a court may consider intake questionnaire without converting motion to dismiss into a motion for summary judgment]; Federal Exp. Corp. v. Halowecki, 552 U.S. 389 (2008) [Court considered intake questionnaire when ruling on a motion to dismiss].



3167360, at * 6 (D.S.C. Aug. 9, 2010) [Noting that an intake questionnaire is not shared with the employer, while the administrative charge form "serves to define the scope of the [administrative agency's] investigation and to notify the defendant of the charges against it.  A Plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the . . . charge itself.  Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer"], citing Barzanty v. Verizon, PA., Inc., 361 Fed.Appx. 411, 415 (3rd Cir. 2010); see also Park v. Howard University, 71 F.3d 904, 909 (D.C. Cir. 1995)["To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the perspective defendant"], quoting Early v. Bankers Life and Cas. Co., 959 F.2d 75, 80 (7th Cir. 1992); Green v. Walmart Stores, Inc., No. 11-2219, 2012 WL 2048207, at * 2 (D.S.C. May 3, 2012)["[T]his District and other jurisdictions have repeatedly concluded that claims raised in the questionnaire but not the actual . . . charge are not properly exhausted and that such claims are ripe for dismissal"] (internal citations omitted), adopted and incorporated into, 2012 WL 2046124 (D.S.C. June 6, 2012).  Here, as was the case in Green, the questionnaire itself conspicuously, at the top of the first page, states in bold type that "**COMPLETION AND SUBMISSION OF THIS QUESTIONNAIRE DOES NOT IMPLY OR CONSTITUTE THE FILING OF A CHARGE**".  As was noted by the Court in Green, "[t]he disclaimer makes it impossible, as an objective matter, to . . . construe the questionnaire" as a charge.  Green, 2012 WL 2048207, at * 3.

       Therefore, in determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as are set forth in her administrative charge, and only those discrimination claims set forth in the administrative charge and reasonably related thereto or were



developed by a reasonable investigation of the claims set forth in the original charge may be maintained in a subsequent Title VII lawsuit. Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 963 (4th Cir. 1996); Jones, 551 F.3d at 300. "Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge". Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)(internal quotation marks and citations omitted).

Plaintiff's administrative charge clearly only asserts claims for gender discrimination, and does not set forth any claim for disability discrimination under the ADA or for retaliation under Title VII or any other discrimination statute. See Defendant's Exhibit (Court Docket No. 15-1). Therefore, these claims are subject to dismissal. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred); Iqbal, 129 S.Ct. at 1949 [To survive a motion to dismiss, Plaintiff must have set forth a claim for relief that is plausible "on its face"].[4]

---

[4]Plaintiff also argues, inter alia, that she should be allowed to pursue her ADA and Title VII retaliation claims because administrative exhaustion of remedies is not a jurisdictional prerequisite to the bringing of a suit in federal court, but is instead a requirement subject to waiver, estoppel, and equitable tolling, citing to Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1983). However, the Defendant clearly has not waived this defense, and Plaintiff has presented no cogent argument for why the Defendant should be estopped from asserting this defense. Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992)[Equitable relief is reserved for only the most deserving complainants, usually where there exists affirmative misconduct], vacated on other grounds, 113 S.Ct. 1940 (1993); Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002) ["The party who invokes equitable
(continued...)



## II.

## (Three Hundred Day Claim Requirement)

Defendant further asserts that, even if Plaintiff did assert claims in her administrative charge for retaliation or under the ADA, Plaintiff's Third Cause of Action under the ADA as well as *all* of Plaintiff's claims asserted under Title VII (not just her retaliation claim) are subject to dismissal for failure of the Plaintiff to file her administrative charge within three hundred (300) days of the alleged discriminatory acts of which Plaintiff complains. After careful review of the arguments and exhibits presented, the undersigned is constrained to agree.

As previously noted, both Title VII and the ADA require that a claimant file a charge of discrimination (in a "deferral state") within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency. See 42 U.S.C. § 2000e-5(e), 42 U.S.C. § 12117(a). Here, it is undisputed that South Carolina is a deferral state, and that SCHAC is the appropriate state agency for purposes of initiating state proceedings. Therefore, Plaintiff had three hundred (300) days to file her administrative charge with SCHAC following a discriminatory act, and a failure by the Plaintiff to do so bars her from pursuing a Title VII or ADA lawsuit in this Court with respect to any alleged discriminatory act

---

[4](...continued)
tolling bears the burden of demonstrating that it applies in his case."]. In any event, Defendant correctly notes in its reply brief that Zipes referred to the *untimeliness* of an administrative charge. Zipes, 455 U.S. at 393. See also Davis v. North Carolina Dep't. of Corrections, 48 F.3d 134, 140 (4th Cir. 1995). Defendant's argument here does not rest on the timeliness of the filing of the administrative charge or Plaintiff's federal court Complaint; rather, it rests on the fact that Plaintiff failed to assert in her administrative charge the claims that she is now asserting in federal court, and a "failure by the Plaintiff to exhaust administrative remedies concerning a Title VII [or ADA] claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).



violating these statutes which falls outside of this three hundred (300) day period. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967); see National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

The record reflects that Plaintiff's administrative charge was formally filed with SCHAC on June 16, 2011, after having been received by SCHAC on June 3, 2011. See Exhibits (Court Docket Nos. 15-1, 24-2, p.1).[5] Based on Plaintiff's administrative charge filing date of June 16, 2011, any alleged discriminatory conduct asserted in this lawsuit would have to had occurred on or after August 20, 2010. However, Plaintiff specifically alleges in her charge of discrimination that the discriminatory acts of which she complains occurred on or before August 4, 2010. Even assuming the unverified charge (a copy of which the Court has not been provided) apparently received by SCHAC on June 3, 2011 could constitute Plaintiff's administrative charge,[6] the alleged

---

[5]Plaintiff's Exhibit (Court Docket No. 24-2, p. 1) indicates that Plaintiff initially provided her charge of employment discrimination to SCHAC on June 3, 2011, but that since what she had provided did not fully comply with the filing requirements, she was instructed to sign, date and notarize an official charge of discrimination and return it to SCHAC, which she did on or about June 16, 2011. See Defendant's Exhibit (Court Docket No. 15-1).

[6]Plaintiff cites to the case of Edelman v. Linchburg College, 535 U.S. 106 (2002), as support for a finding that her June 3, 2011 filing could satisfy her filing requirement. However, while that case does hold that an unverified filing can count as the filing of an administrative charge where the filing is subsequently verified by another filing, it is still a requirement that the initial filing was treated as the filing of an administrative charge by the claimant and the administrative agency. Edelman, 535 U.S. at 107-108. While it is arguable that under Edelman, at least for purposes of a Rule 12 motion to dismiss, Plaintiff's submission to SCHAC on June 3, 2011 could satisfy her filing requirement for purposes of this lawsuit, that would still not save her Title VII and ADA claims, as they would still be untimely for the reasons set forth hereinabove, supra. Additionally, the Edelman decision further underscores the undersigned's previous finding that Plaintiff's initial intake questionnaire is not entitled to be considered a charging document, as the Edelman decision noted
(continued...)



discriminatory acts of which Plaintiff complains must still have occurred on or after August 7, 2010. Therefore, since Plaintiff's claims fall outside of the applicable three hundred (300) day claim period, they may not be considered by this Court.

While this may seem a harsh result, the Fourth Circuit has strictly construed the statutory filing requirements for discrimination cases, holding that "[p]rocedural requirements...for gaining access to the...courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Polsby, 970 F.2d at 1364, vacated on other grounds, 113 S.Ct. 1940 (1993) (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)); see Poteat v. Mack Trucks Inc., No. 96-1437, 1997 WL 33117, **4 (4th Cir. January 28, 1997); Chappell v. Emco Machine Works Co., 601 F.2d 1295, 1303 (5th Cir. 1979); cf. Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir. 1993)[finding a complaint was time barred when filed five days too late]; Harvey v. New Bern Police Dep't, 813 F.2d 652, 653-654 (4th Cir. 1987)[finding a complaint was time barred when filed one day too late]; Johnson v. Bryant, No. 11-537, 2012 WL 2935254 at *2 (D.S.C. July 19, 2012)[dismissing complaint as untimely where plaintiff filed suit 2 days late based upon her receipt of her right to sue letter].[7]  Therefore, since Plaintiff failed to file

---

[6](...continued)
in dicta that the failure of the administrative agency to comply with the statutory requirement that notice of a charge be served upon the entity being charged within a set period of time provided some support for a finding that an initial inquiry filing was not to be considered an administrative charge. Id, at 108.

[7]As the filing of a timely charge of discrimination with the administrative agency is not a jurisdictional prerequisite to suit, but a requirement that, like a statute of limitations, is subject to waiver, estoppel or equitable tolling, Plaintiff could argue that she is entitled to equitable tolling. However, "[e]quitable relief is reserved for only the most deserving complainants," usually where there exists affirmative misconduct; Polsby, 970 F.2d. at 1363; and Plaintiff has advanced no
(continued...)



her administrative charge within three hundred (300) days of the discriminatory conduct alleged, and in light of the applicable caselaw and statutory requirements, the undersigned has no choice but to find that Plaintiff's claims, to the extent they are asserted under Title VII or the ADA, are time barred and subject to dismissal.

### III.

### (Fourth Cause of Action for Retaliation)

In her Fourth Cause of Action, Plaintiff asserts that she was constructively discharged from her job in retaliation for engaging in protected activity when she complained about the Defendant's treatment of her. Plaintiff purportedly asserts these claims under the ADA, Title VII, the Equal Pay Act (EPA), and the public policy of South Carolina. See Complaint (Fourth Cause of Action). However, for the reasons already discussed herein, supra, to the extent Plaintiff is asserting Title VII and the ADA as a basis for her claim in her Fourth Cause of Action, those grounds for relief are subject to dismissal.

With respect to Plaintiff's "public policy" claim, Defendant argues that this cause of action is subject to dismissal because Plaintiff has or had existing statutory remedies for her retaliatory discharge claim. The undersigned is again constrained to agree. In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will

---

[7](...continued)
argument for an awarding of equitable relief in this case. Ramirez, 312 F.3d at 183 ["The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case."].



employee[8] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". Id, at 216. See also Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; Barron v. Labor Finders of South Carolina, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009), aff'd as modified by, 713 S.E.2d 634 (S.C. 2011); although some other limited situations may also apply. See Barron, 713 S.E.2d at 637 [noting that there may be cases where a public policy wrongful termination claim could be pursued even where a discharge did not itself violate a criminal law or the employer did not require the employee to violate the law], citing to Garner v. Morrison Knudsen Corp., 456 S.E.2d 907 (S.C. 1995) and Keiger v. Citgo Coastal Petroleum, Inc., 482 S.E.2d 792 (S.C.Ct.App. 1997).

      Plaintiff has failed in the allegations of her Complaint to identify any public policy violation with respect to this claim. There is no indication in the allegations of Plaintiff's complaint, nor does Plaintiff argue in her response brief, that a violation of a criminal law was involved in this matter. Rather, the violations of law cited by the Plaintiff are Defendant's alleged violations of Title VII, the ADA, the EPA, and perhaps some South Carolina statutes such as the South Carolina Human Affairs Law (SCHAL), S.C. Code Annotated § 1-13-90, et seq. However, even assuming that the Defendant did deny Plaintiff her rights under one or more of those statutes, that is not the commission of a crime, nor is there any allegation that the Defendant otherwise required Plaintiff to violate a "public policy" as defined by state law. Lawson v. South Carolina Dept. of Corrections,

---

[8]Neither party disputes that Plaintiff was an "at will" employee.

11



532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; Eady v. Veolia Transp. Services, Inc., 609 F.Supp.2d 540, 559 (D.S.C. 2009)[Plaintiff failed to show violation of public policy where he claimed that he was terminated for refusing to sign a blank affidavit]; King v. Charleston County School District, 664 F.Supp.2d 571, 584-585 (D.S.C. May 21, 2009); Love v. Cherokee County Veteran's Affairs Office, No. 09-194, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; Barron, 2009 WL 1520820, at * 3 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; Merck v. Advanced Drainage System, Inc., 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Even in those limited (and as yet undefined[9]) circumstances where the violation of a criminal statute is not involved, a Ludwick claim still cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination. The South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 at *3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); see Barron, 713 S.E.2d at 637 [noting that, even where an at-will employee might otherwise have a public policy

---

[9]See Barron, 713 S.E.2d at 617-618.



wrongful termination claim even when no criminal violation is involved, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"]. Here, Plaintiff has or had statutory remedies for her wrongful termination claim under the EPA, SCHAL, Title VII, and the ADA.[10]

While Plaintiff argues that an exception allowing for a public policy claim under the allegations of her Complaint should be approved by the Court here, and it is true that, as a general matter, novel issues should not ordinarily be decided on a Rule 12 motion to dismiss; see Garner, 456 S.E.2d at 909; the determination of what constitutes public policy is a question of law for the courts to decide; Barron, 713 S.E.2d at 638; and it has already been conclusively held in other cases that violations of federal and state discrimination statutes do not give rise to a public policy claim under South Carolina law. Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)["South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; Jefferson v. Chestnut Group, Inc., No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing state public policy claim where Plaintiff clearly had a potential remedy under South Carolina Human Affairs Law and Title VII]; Washington, 2009 WL 386926 [Dismissing public policy claim where

---

[10]While the EPA does not itself contain a provision allowing for a claim for retaliatory discharge, claims of retaliation for filing EPA complaints are allowed under 29 U.S.C. § 215(a)(3) [part of the Fair Labor Standards Act]. See Truckenmiller v. Burgess Health Center, 814 F.Supp.2d 894, 905 (N.D.Iowa 2011)["Because the EPA is an amendment to the FLSA and is codified under the same chapter . . . retaliation for filing EPA complaints . . . is analyzed under § 215(a)(3)"], citing Lambert v. Ackerly, 180 F.3d 997, 1014, n. 5 (9th Cir. 1999) (internal quotes and citations omitted); Traver v. Tucson Unified School District, 376 Fed.Appx. 799, 800 (9th Cir. 2010).



employer purportedly denied employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991)[No wrongful discharge claim where employee already had an existing remedy under 42 U.S.C. § 1983]; see Merck, 921 F.2d at 554 [The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Therefore, as Plaintiff has a statutory remedy for her retaliatory termination claim, she may not pursue a separate state law public policy/wrongful termination cause of action. Palmer, 2006 WL 2708278, at * * 3 and 5; Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting Stiles v. American General Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999)); Ramsey v. Vanguard Servs, Inc., No. 07-265, 2007 WL 904526 at *1 (D.S.C. Mar. 22, 2007); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992). The Defendant is entitled to dismissal of Plaintiff's Fourth Cause of Action to the extent Plaintiff asserts in this cause of action a claim for retaliatory constructive discharge in violation of Title VII, the ADA, or the public policy of South Carolina. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim as a matter of law . . . ."]; Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"]; see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].



**Conclusion**

Based on the foregoing, it is recommended that Plaintiff's asserted grounds for relief under Title VII, the ADA, and the public policy of South Carolina be **dismissed**. If the Court accepts this recommendation, Plaintiff's Third Cause of Action under the ADA will be dismissed, in toto, while Plaintiff's Second and Fourth causes of Action will proceed only to the extent the claims asserted therein are asserted under the Equal Pay Act. Plaintiff's remaining causes of action remain unchanged.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 7, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

